Filed 6/30/26  In re A.E. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.E. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G066427 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 22DP0785A, 22DP0786A) |
| v. | |
| S.E., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Adrianne E. Marshack, Judge. Affirmed.

Cynthia L. Loo, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\* \* \*

S.E. (the mother) appeals from an order terminating parental rights over her two daughters[1] following a hearing pursuant to Welfare and Institutions Code section 366.26[2] (the permanency planning hearing). The mother's sole argument on appeal is that the juvenile court erred by declining to apply the parental benefit exception. (§ 366.26, subd. (c)(1)(B)(i).) The mother contends she demonstrated a positive and substantial emotional attachment between her and the children and the parental benefit exception should have been applied. We find no error and affirm the order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

While we have reviewed the entire record, we omit facts not necessary to decide the limited issue in this appeal in the interests of brevity.

The older daughter was born prematurely in 2020 with numerous serious medical and developmental conditions. She was seen by various medical specialists. She also participated in physical, occupational, and feeding therapy.

In 2022, the children were detained from both parents after the younger daughter, age 10 months at the time, ingested the father's fentanyl. The court found it had jurisdiction under section 300. The mother was reunited with the children with family maintenance services and dependency was terminated in 2023.

---

[1] Due to the difficulty of abbreviating the names of the children in this particular case in a manner consistent with protective nondisclosure, we refer to the children individually as the older daughter or child and the younger daughter or child.

[2] Subsequent statutory references are to the Welfare and Institutions Code.

As to the instant case, a welfare check was completed at the mother's home in June 2024. The residence was dirty and lacked sufficient food. The mother was unemployed and receiving CalFresh benefits. During the welfare check, the mother appeared to be under the influence. She initially stated she used methamphetamine the day prior, and later claimed she took a bar of Xanax the previous day. The children were detained.

As of the time of detention, the older daughter had diagnoses of cerebral palsy, hydrocephaly and brain bleeds. She was fed through a G-tube and used a wheelchair. She had braces for her legs and a shunt. She was nonverbal and communicated by making sounds and using gestures. She could not sit or stand on her own. She required full assistance to complete daily living activities.

The Orange County Social Services Agency (SSA) filed a dependency petition alleging the children came within section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support). The children were detained at the detention hearing. The older daughter was initially hospitalized and then placed with a medical placement caregiver, Denise B. The younger daughter was placed with the paternal grandmother. The mother was given a minimum of eight hours of monitored visitation.

Following the June detention hearing, with respect to the younger daughter, the paternal grandmother reported the mother visited the child, during which the mother actively engaged with her.

As to the older daughter, Denise B., the caregiver, reported the mother would change the child's diaper, exercise with her, and conduct related therapies. The mother missed several visits in early August, reporting that she had been hospitalized, but she did not respond to the social

worker's efforts to contact her and determine the reason for her hospitalization.

The paternal grandmother began training as a medical caregiver so the two children could be placed together. The older daughter's medical regimen included 17 doses of medication daily. A medical caregiver required training on "operating a G-tube pump, nebulizer, CPAP, suction machine, and handling seizure emergencies."

Denise B. reported the mother was actively involved in the older child's medical care, attending appointments and engaging in activities. The caregiver sought the mother's participation in a sleep study for the older child, but the mother could not be reached.

The mother's progress on reunification services was spotty. She missed all her drug tests and did not enroll in any services except psychiatric care, where she received medication.

At the jurisdiction/disposition hearing in September, the court found the allegations in the petition true. Services were ordered for the mother.

In November, the older child was moved from the medical caregiver's care to the home of the paternal grandmother.

During this period, the mother's compliance with her case plan was minimal. She had not completed any elements of her case plan and had not started numerous services, including drug testing, prior to January 2025.

As to visits, the mother had "been inconsistently visiting with the children and failing to show up to visits after confirming her attendance." The paternal grandmother described the mother's visits as sporadic. The mother had failed to visit consistently for as long as three weeks at a time. The mother's visits became more consistent starting in January 2025.

Additionally, the mother attended the children's medical visits inconsistently. She had also failed to make herself available to participate in the older child's Individualized Education Program process, and that process was halted in December.

The mother reported a drug relapse in August 2024 and that she drank alcohol in October 2024. The paternal grandmother indicated her willingness to provide permanency to the children through adoption or legal guardianship if reunification failed.

SSA's recommendation at the six-month review stage was to terminate services and schedule a permanency planning hearing. At the April 2025 hearing, the court terminated reunification services and scheduled a permanency planning hearing, but the court authorized conditional limited funding for the mother's services until the hearing.

In May 2025, SSA initially recommended guardianship as the permanent plan. In July, the agency changed its recommendation to termination of rights and adoption.

From September through December 2025, the mother was visiting consistently and appropriately. No problems were raised during visits, although the caregiver expressed doubts to the social worker that the mother was "not completely sober" based on social media photographs. The younger child was "a little sad" at the end of visits. The mother did not attend doctor's appointments.

On December 26, 2025, the mother was arrested for second degree robbery, inflicting injury on an elder adult, and two counts of battery. While the mother had been participating in services, this came to a halt upon her arrest. The children, meanwhile, were doing well with the paternal

5

grandmother and had a strong bond with her, as well as with a paternal aunt who resided with the grandmother.

At the continued permanency planning hearing in January 2026, the mother testified that her visitation was inconsistent after the detention hearing because the paternal grandmother did not allow it.[3] Thereafter, from September 2024 to June 2025, she "was going through some things," including depression, that caused her to miss several weeks of visits. She testified she visited consistently starting in June 2025. The mother testified the children were happy to see her and she attended to their needs, including her older daughter's special needs. Her younger daughter would sometimes be sad when the visits were over.

At the conclusion of the hearing, the court found the children generally and specifically adoptable. With regard to the parental benefit exception, the court found visitation was sporadic and inconsistent for the first 14 months of the case, only improving in the last six months. Accordingly, the court found the mother failed to demonstrate the first requirement for the parental benefit exception to apply.

Although unnecessary, the court also analyzed the remaining factors. With respect to a substantial positive emotional attachment, the court found no evidence was presented—other than the younger daughter calling the mother "mom"—that the relationship was more than that of a favored playmate. It did not rise to the level of a substantial bond. The court also found the lack of the mother's participation in the children's medical appointments, especially the older child, was significant.

---

[3] No other evidence was introduced to support this contention.

As to the final prong, detriment to the child, showing that the child would derive some benefit from continuing the relationship was not sufficient. The court found no evidence that either child demonstrated significant distress at the end of visits. While it was possible that if visits were discontinued, the children would experience some sadness, it was insufficient to justify withholding the security and stability of an adoptive home. Accordingly, the court found the parental benefit exception did not apply and ordered parental rights terminated and the children placed for adoption.

DISCUSSION

I.

THE PARENTAL BENEFIT EXCEPTION

*A. Statutory Framework and Standard of Review*

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) The purpose of the section 366.26 hearing is to select a permanent plan for the child. (*Id.* at pp. 630–631.) Section 366.26 lists permanent plans in order of preference, and adoption is the preferred permanent plan. (§ 366.26, subd. (b)(1); *In re Edward R.* (1993) 12 Cal.App.4th 116, 121–122.) The court must first find by clear and convincing evidence that the child is likely to be adopted. (§ 366.26, subd. (c)(1).) If the court does so, and services have already been terminated, the court then terminates parental rights to permit adoption. (*Caden C.*, at pp. 630–631.)

The exception to this rule is if the parent shows that one of several statutory provisions applies. (§ 366.26, subds. (c)(1)(B)(i)–(vi),(c)(4)(A).) "[I]f the parent shows that termination would be detrimental to

7

the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*Caden C.*, *supra*, 11 Cal.5th at pp. 630–631.) The parent bears the burden of establishing the exception applies. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418–1419 (*Beatrice M.*).)

One of these is the parental benefit exception. "From the statute, we readily discern three elements the parent must prove to establish the exception: (1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.*, *supra*, 11 Cal.5th at pp. 631–632.) This is a high standard to meet on appeal. The beneficial relationship exception to the termination of parental rights "may be the most unsuccessfully litigated issue in the history of law." (*In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1255, fn. 5, disapproved on other grounds by *In re Zeth S.* (2003) 31 Cal.4th 396, 413–414.)

The first two elements of the court's analysis are reviewed for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.) "[W]e presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

"In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.'" (*Caden C.*, *supra*, 11 Cal.5th at p. 640; *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.) "The [court's] determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial

8

court might have reached a different result had it believed other evidence.'" (*Caden C.*, at p. 640.)

The final step, determining whether termination of parental rights would be detrimental to the child, is reviewed for abuse of discretion. (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) "Review for abuse of discretion is subtly different [than substantial evidence review], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when '"the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'" (*Ibid.*) "[T]he practical difference between the standards is not likely to be very pronounced." (*Ibid.*) "At its core, the hybrid standard . . . simply embodies the principle that '[t]he statutory scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard, reached pursuant to the statutory scheme's comprehensive and controlling provisions.'" (*Ibid.*)

## B. Visitation and Contact

As noted above, the first element of the parental benefit exception requires regular visitation and contact. (*Caden C.*, *supra*, 11 Cal.5th at pp. 631–632; *Beatrice M.*, *supra*, 29 Cal.App.4th at pp. 1418–1419.) This element "is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) While perfection is not required, "significant lapses in visits" will "fatally undermine any attempt to find the beneficial parental relationship exception." (*In re I.R.* (2014) 226 Cal.App.4th 201, 212.)

The children were detained in June 2024. In September 2024, the court ordered eight hours per week of supervised visitation. The mother was asked if she agreed with the social worker's report that between September 2024 and January 2025 she was visiting the children sporadically. She asked for a definition of sporadically, which was given as "not consistently." The mother agreed she had not visited consistently. The mother's visits became more consistent starting in January 2025. Those visits stopped once the mother was arrested, as she remained in custody as of January 2026 and the court continued the permanency planning hearing.

The mother also contends there was not an overall showing of significant lapses or gaps in visitation, but we disagree. She cites her own testimony denying that she ever missed visits for more than a month, but that is not the legal standard. There was substantial evidence, including her own testimony, that for the first six months of dependency, the mother's visits were inconsistent, and mother did not take full advantage of visitation as permitted by court orders. (*In re Eli B.* (2022) 73 Cal.App.5th 1061, 1070.) While the mother contends that SSA did not argue her missed visitation was grounds for terminating parental rights, she misses the mark. The burden is on her to establish the elements of the parental benefit exception exist. (*Beatrice M.*, *supra*, 29 Cal.App.4th at pp. 1418–1419.) The mother's citation to *In re D.M.* (2021) 71 Cal.App.5th 261, is also inapposite. In that case, visitation was not an issue as the lower court had determined it was "fairly consistent." There was no analysis of this element—the court merely noted the lower court's finding was supported by substantial evidence. (*Id.* at p. 270.)

Unlike *In re D.M., supra,* 71 Cal.App.5th 261, the mother's visits here were not fairly consistent. Visitation was inconsistent for the first six

10

months of dependency. This long period of inconsistency is a "significant lapse[]" that is fatal to her claim. (*In re I.R., supra,* 226 Cal.App.4th at p. 212.)

Because we find the mother has failed to establish there was not substantial evidence to support the court's finding as to the first element of the exception, we need not proceed to the remaining elements. Were we to do so, however, we would find substantial evidence to support the second element and no abuse of discretion as to the third element.

DISPOSITION

The juvenile court's order is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

11